# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

———————————

№. 23-2415

———————————

Andrew R. Perrong,
*Plaintiff-Appellant*,

v.

Montgomery County Democratic Committee,
Montco Victory, and Joseph Foster
*Defendants-Appellees.*

———————————

Appeal from Memorandum Opinion and Order
Granting Motion to Dismiss in No. 2:22-cv-04475 in the
United States District Court for the Eastern District of Pennsylvania.
Honorable Mitchell S. Goldberg

———————————

## BRIEF OF APPELLANT
## AND APPENDIX VOL. I, PAGES APPX. 1 – APPX. 11

———————————

s/ ANDREW R. PERRONG
ANDREW R. PERRONG
1657 The Fairway #131
Jenkintown, PA 19046
andyperrong@gmail.com
(215) 791-6957
*Plaintiff-Appellant Pro Se*

# **Table of Contents**

I.   **Statement of Jurisdiction** ............................................................ 1

II.   **Statement of Issues** .................................................................... 1

III.  **Related Cases and Proceedings** .................................................. 3

IV.  **Statement of the Case** ................................................................ 3

   A.  Plaintiff sues the Defendant, alleging that they unlawfully used a random or sequential number generator to call his number from a list three times in three days. .................................................................... 3

   B.  The District Court dismisses Plaintiff's case, holding that an ATDS must generate telephone numbers themselves randomly or sequentially. .............................................................................. 5

V.   **Summary of Argument** ............................................................... 6

VI.  **Argument** ................................................................................... 9

   A.  The plain text of the TCPA makes clear that the TCPA prohibits using random number generation to call telephone numbers, not just generating telephone numbers randomly or sequentially. ................... 9

      1.   The District Court's reading is incorrect because it renders references to "storage" superfluous. .................................... 12

      2.   The District Court's reading is incorrect because it runs contrary to the plain statutory text of a "number generator," which has a common, precise technological meaning. ............................... 15

      3.   The District Court's requirement that a "number generator" itself generate telephone numbers randomly has been rejected by other courts because it opens the floodgates to the very calls the statute makes clear it sought to prevent. ........................................ 22

   B.  The District Court paid insufficient heed to the Supreme Court's decision in Facebook v. Duguid. Its reliance on other decisions was therefore misplaced. .............................................................. 28

   C.  This Court's decision in Panzarella is not inconsistent with the Plaintiff's interpretation, which alleviates the harm the TCPA sought to address while permitting certain list-based calls. .......................... 34

**VII. Conclusion**......................................................................40

**VIII. Combined Certificates of Compliance and Service**............42

## <u>Table of Citations</u>

### Cases

*Barnett v. Bank of Am., N.A.*, No. 3:20-CV-272-RJC-DSC, 2021 WL 2187950 (W.D.N.C. May 28, 2021)......................................................26

*Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002)................................22

*Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 WL 2936636 (E.D. Mich. July 13, 2021) ........................................................................27

*Borden v. eFinancial, LLC*, No. C19-1430JLR, 2021 WL 3602479 (W.D. Wash. Aug. 13, 2021)........................................................23, 27, 40

*Brickman v. United States*, 56 F.4th 688 (9th Cir. 2022)................37, 40

*Carl v. First Nat'l Bank of Omaha*, No. 2:19-CV-00504-GZS, 2021 WL 2444162 (D. Me. June 15, 2021)........................................................26

*Connelly v. Lane Const. Corp.*, 809 F.3d 780, (3d Cir. 2016)....................2

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021)  6, 10, 11, 12, 14, 28, 32, 33, 38, 40

*Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265 (3d Cir. 2013)..................23

*In re McDonald*, 205 F.3d 606 (3d Cir. 2000). ........................................29

*Jiminez v. Credit One Bank, N.A.*, 632 F. Supp. 3d 381 (S.D.N.Y. 2022) ........................................................................................36

*Libby v. Nat'l Republican Senatorial Comm.*, 551 F. Supp. 3d 724 (W.D. Tex. 2021) .................................................................................26

*MacDonald v. Brian Gubernick PLLC*, No. CV-20-00138-PHX-SMB, 2021 WL 5203107 (D. Ariz. Nov. 9, 2021)............................................26

*Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761 (3d Cir. 2013)........2

*McEwen v. Nat'l Rifle Ass'n of Am.*, 2021 WL 5999274 (D. ME Dec. 20, 2021) ..............................................................................................26

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) ............................1

*Mina v. Red Robin Int'l, Inc.*, No. 20-CV-00612-RM-NYW, 2022 WL 2105897 (D. Colo. June 10, 2022) ........................................................27

*Montanez v. Future Vision Brain Bank*, LLC, 536 F. Supp. 3d 828 (D. Colo. 2021) ....................................................................................26

*Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 881 (3d Cir. 2022) 14, 15, 24, 34, 35, 36, 37, 39

*Perrong v. Bradford*, No. 2:23-CV-00510-JDW, 2023 WL 6119281 (E.D. Pa. Sept. 18, 2023)................................................................................9

*Poonja v. Kelly Servs., Inc.*, No. 20-CV-4388, 2021 WL 4459526 (N.D. Ill. Sept. 29, 2021) ..............................................................................26

*Scherrer v. FPT Operating Co., LLC*, No. 19-CV-03703-SKC, 2023 WL 4660089 (D. Colo. July 20, 2023) ...............................................24, 32

*Smith v. Vision Solar LLC*, No. 20-2185, 2023 WL 2539017 (E.D. Pa. Mar. 16, 2023) ..........................................................................20

*Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294 (D.S.C. 2021)...26, 27

## Statutes

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

47 U.S.C. § 227 .......................................................................... 1, 10, 15, 16

## Other Authorities

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE
    INTERPRETATION OF LEGAL TEXTS (2012) ............................................... 23

Appendix ("Appx.") 1, 3, 4, 5, 12, 16, 19, 20, 21, 29, 30, 31, 32, 33, 34, 36,
    39

DAVID JOHNSTON, RANDOM NUMBER GENERATORS-PRINCIPLES AND
    PRACTICES (2018) .................................................................................. 17

*Get Campaign UUID*, GENESYS ........................................................... 20

Interantional Organization for Standardization, *Generation of
    Universally Unique Identifiers (UUIDs) and Their Use in Object
    Identifiers*, ISO/IEC 9834-8:2014 (2014) ............................................ 21

J. EDWARD CROWDER, CASINO GAMBLING FOR FUN AND PROFIT (2000) .... 17

## I.  STATEMENT OF JURISDICTION

Plaintiff-Appellant Andrew R. Perrong brought this action asserting violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA") against Defendants-Appellees Montgomery County Democratic Committee, Montco Victory, and Joseph Foster. The United States District Court for the Eastern District of Pennsylvania had jurisdiction under 28 U.S.C. § 1331. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 377 (2012) (holding that federal courts have subject matter jurisdiction over TCPA suits).

On August 9, 2023, Plaintiff timely filed his Notice of Appeal. Appx. 1–2. This appeal is from the District Court's Memorandum Opinion and Order dated July 18, 2023 granting Defendants' Motion to Dismiss. *Id.* 3–11. This Court has jurisdiction under 28 U.S.C. § 1291.

## II.  STATEMENT OF ISSUES

This appeal arises from the District Court's order granting Defendants' Motion to Dismiss Plaintiff's TCPA claim based on the holding that one does not "use" an Automatic Telephone Dialing System ("ATDS"), as defined by the TCPA, by using a random or sequential number generator to dial telephone numbers from a list.

1

**Issue 1:**

Did the District Court err in granting the Motion to Dismiss by holding that an Automatic Telephone Dialing System must self-generate telephone numbers randomly or sequentially and that a caller does not use an Automatic Telephone Dialing System when it uses random or sequential number generation to store, produce, and dial telephone numbers from a numbered list of telephone numbers?

*Suggested answer:* Yes.

**Standard of Review:**

Because this appeal involves a challenge to an order granting a motion to dismiss under Rule 12(b)(6), the standard of review is *de novo. Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 765 (3d Cir. 2013). This Court applies the same standard as the District Court in assessing a motion to dismiss under Rule 12(b)(6), taking all the Plaintiff's well-pled factual allegations as true and determining whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786–8 (3d Cir. 2016).

2

### III.   RELATED CASES AND PROCEEDINGS

None.

### IV.   STATEMENT OF THE CASE

A.  *Plaintiff sues the Defendant, alleging that they unlawfully used a random or sequential number generator to call his number from a list three times in three days.*

The events precipitating this controversy began when Plaintiff-Appellant received three calls from the same caller ID on October 22, 23, and 24, 2019. The first two calls went to voicemail, but no message was left. Plaintiff answered the third call on October 24, 2019. Appx. 20.

When Plaintiff answered the call, typical of traditional automated dialing platforms that automatically send hundreds of calls at a time, nobody was on the line. *Id.* 22. It was not until almost ten seconds later that an agent of the Montgomery County Democratic Committee and its sister organization Montco Victory came onto the line. *Id.* Immediately before this agent came on the line, the Plaintiff heard an audible "click" when the caller, "Laryssa," was patched through. *Id.*

On the foregoing facts, the Plaintiff filed suit. He alleged that the Defendants-Appellees called him using an ATDS, equipment whose use is prohibited by the TCPA. Plaintiff alleged that Defendants used an

3

ATDS as prohibited by the TCPA based on the number and frequency of the calls, the fact that the caller left no message, and the fact that there was a delay of almost ten seconds before a human being came onto the line. Appx. 23–26. Plaintiff further alleged that the system was programmed with code that relied upon random or sequential number generators to store or produce the telephone numbers to be called. *Id.* Specifically, the Plaintiff alleged that Defendants used a random or sequential number generator to add an indexing list of randomly or sequentially generated numbers to a list of voters' telephone numbers, and that a randomizer was used to select the indexed numbers. *Id.* 24. Thus, Defendants were mass-dialing thousands of voters without consent, just as Congress intended to prohibit when enacting the TCPA.

The Defendants ultimately filed a Motion to Dismiss and a second Motion to Dismiss, making the same arguments as to the remaining Defendants. *Id.* 30–41, 56–61. In their Motion, Defendants argued that the TCPA does not prohibit using equipment which dials telephone numbers from a list, even if that equipment stores, produces, and dials telephone numbers randomly or sequentially. Rather, they argued, an ATDS must have the capacity to *generate **telephone*** numbers randomly

4

or sequentially; randomly or sequentially *generating numbers*, such as to select telephone numbers from a list, they argued, falls short of using an ATDS. *Id.* 40.

B.   *The District Court dismisses Plaintiff's case, holding that an ATDS must generate telephone numbers themselves randomly or sequentially.*

In granting the Defendants' Motion to Dismiss, the District Court below severely limited the scope of the TCPA's ATDS prohibition by adopting an underinclusive reading of the statutory text. It held that the statute's reference to a "random or sequential number generator" in reality meant a "random or sequential *telephone* number generator," limiting the TCPA's reach only to equipment that generates telephone numbers randomly or sequentially, as opposed to using random or sequential number generation functionality to store or produce and dial a telephone number from a numbered list. Appx. 9–10. Because the Plaintiff did not allege that the system used to contact him *generated telephone* numbers randomly itself, it dismissed the case. *Id.* 11.

In ruling the way it did, the District Court legalized *any* telephone equipment that does not *itself* randomly or sequentially generate telephone numbers. These systems include the one at issue here, which

randomly or sequentially store and produce telephone numbers using numerical sequences to index lists of telephone numbers. However, they do not themselves generate telephone numbers randomly or sequentially; the telephone numbers themselves are loaded into the system by means of a list. The systems which the District Court legalized nevertheless make incessant calls across multiple days by using a random number generation process to dial numbers from a list until a human being answers, and then make the called party wait for the privilege of speaking with someone when they answer.

## V.    SUMMARY OF ARGUMENT

This appeal is deceptively simple. It boils down to what type of technology a "random or sequential number generator" is. It also asks if, in using the term "number generator," Congress meant exactly that, or instead intended to limit the term to "telephone number generators." The District Court erred in limiting the scope of ATDS equipment to include only equipment that can generate telephone numbers randomly or sequentially, a holding that is inconsistent with the Supreme Court's test set forth in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021).

For years, courts at all levels, including the Supreme Court and this one, have tussled with the technological nuances of the TCPA's ATDS prohibition. Unlike those cases, this appeal presents a relatively straightforward but unanswered question: must an ATDS randomly or sequentially generate telephone numbers *by itself*, as the District Court held, or must the ATDS only employ random or sequential *number* generation to store, produce, and dial telephone numbers from a numerical list, as the plain text of the statute makes clear?

The history, text, and tradition of the TCPA since its drafting as a consumer protection statute in 1991 to alleviate the scourge of new computer dialers until now evidence that the latter interpretation is the correct one. This is so for several reasons.

*First*, the District Court's interpretation is at odds with the plain statutory text, which does not require random or sequential *telephone* number generation. It requires random or sequential "number generation"–full stop. This term has a technically precise meaning. The District Court's reading renders other statutory language superfluous. And, most concerningly, it renders a consumer protection statute liberally interpreted to protect consumers underinclusive by leaving

open a loophole permitting all manner of equipment Congress sought to ban. For these reasons, the vast majority of district courts across the country faced with the same issue have rejected the District Court's interpretation that an ATDS must itself generate telephone numbers.

*Second*, the District Court paid insufficient heed to the Supreme Court's *dicta* and holding in *Facebook*, where the Supreme Court clarified that list-based dialers may be considered ATDS equipment under the TCPA, so long as they use a random or sequential number generator to determine the order in which to pick phone numbers from a preproduced list. Plaintiff alleged just that in his complaint. *Third*, the Plaintiff's interpretation is not at all at odds with this Court's decision in *Panzarella v. Navient Sol's.*, and there exist many commercial systems that dial numbers from a list without resorting to using random or sequential number generation.

Nothing in Plaintiff's brief or position would at all affect trigger-based dialing systems: computerized dialers that run off non-random, nonsequential triggers and that stand ready, for instance, to alert the elderly that their prescriptions are ready or to inform individuals of modest means of potential account fraud. The Plaintiff's interpretation

8

is neither overinclusive nor underinclusive; it targets the precise harm Congress sought to alleviate when it drafted the statute.

The right to telephonic privacy is as central to the core of the Fourteenth Amendment as it is to consumer protection. When viewed in light of the TCPA's stated purpose to prohibit annoying, repetitive, nuisance telephone calling conduct of the ilk described here, it is clear that Congress intended to ban use of *any* dialing system that relies on random or sequential number generation, not just systems that generate telephone numbers themselves randomly or sequentially. The District Court committed error by adopting an unjustifiably narrow interpretation of the ATDS prohibition. This Court must reverse.

## VI.  ARGUMENT

A.    *The plain text of the TCPA makes clear that the TCPA prohibits using random number generation to call telephone numbers, not just generating telephone numbers randomly or sequentially.*

"The best way to know what Congress intended when it passed a statute is to look at the text of the law. The Telephone Consumer Protection Act is no exception." *Perrong v. Bradford*, No. 2:23-CV-00510-JDW, 2023 WL 6119281, at *1 (E.D. Pa. Sept. 18, 2023). Of relevance here, the TCPA bars calls placed by an Automatic Telephone

Dialing System, or ATDS. An ATDS is "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1) (cleaned up).

The statutory text is clear as to what *exactly* an ATDS must do to place a call unlawfully: it must use a random or sequential number generator to store or produce telephone numbers. In other words, it is sufficient that an ATDS uses a random number generator to dial telephone numbers randomly or sequentially from a list. The statutory language  is clear and it does not require that an ATDS must generate the telephone numbers *themselves* randomly or sequentially.

In *Facebook*, the Supreme Court held that the words "using a random or sequential number generator" modify both "store" and "produce." 141 S. Ct. at 1167. That is, in order to be an ATDS, the equipment must either *store* telephone numbers to be called using a random or sequential number generator or *produce* telephone numbers to be called using a random or sequential number generator. *Id.* Under the interpretation of the TCPA rejected by *Facebook*, any system which

automatically dialed telephone numbers from stored lists would be an ATDS, even if no number generators were used.

The rationale for the Supreme Court's holding is clear. If the TCPA prohibited merely *storing* telephone numbers in a list regardless of *how* they were stored (using a random or sequential number generator), every person who has ever dialed a contact from a list in their cell phone address book would use an ATDS to place a call. Congress clearly did not intend such an incongruous result. Indeed, the Supreme Court went on to observe that inclusion of technology that did not employ random number generation presented real world problems of overbreadth because such systems "could affect ordinary cell phone owners in the course of commonplace usage, such as speed dialing or sending automated text message responses." *Id.* at 1171.

In considering that issue, however, the Supreme Court did not directly address the additional issue of whether a "random or sequential number generator" refers only to a device that generates telephone numbers itself, or also equipment that uses a random or sequential number generator to generate numbers associated with a numbered list of telephone numbers. The Court solely determined that Facebook's

11

platform, which sent one-to-one text messages to individuals upon a triggering event and did not rely on random or sequential number generators *at all*, was not the type of technology targeted by Congress.

Indeed, nothing in *Facebook* suggests that an ATDS must produce the telephone numbers to be called *themselves* randomly or sequentially, as the District Court held. Appx. 7. As explained below, Footnote 7 of *Facebook* makes it clear that random or sequential number generation, such as randomly picking a number from a list, suffices. Nevertheless, placing aside the Supreme Court's holding, the interpretation adopted by the District Court is at odds with the TCPA's text and unsound as a technical matter for several reasons.

1. The District Court's reading is incorrect because it renders references to "storage" superfluous.

To start, the District Court's interpretation rendered the references to "storage" in the statute superfluous. Computers are not automatons; the only way a computer can "store" a telephone number is by storing a telephone number it produced itself or by storing one provided to it. *See Facebook*, 141 S. Ct. at 1171–72. As *Facebook* clarified, an ATDS is equipment that either "stores" telephone numbers

12

using a random or sequential number generator *or* "produces" telephone numbers using a random or sequential number generator. Thus, the District Court's ruling contravenes the instructions of the Supreme Court, which observed that "number generators" could be used to either store *or* produce. If Congress had intended to only outlaw dialers that generated random telephone numbers themselves, its inclusion of "storage" would be superfluous. "Storage" implies the system is storing an input it obtained from elsewhere, not merely storing an input it produced itself.

It is clear that equipment that produces telephone numbers by itself using a random or sequential number generator is an ATDS. But what of equipment that "stores" telephone numbers using a random or sequential number generator, such as equipment which assigns a sequential number to each entry in a list of voters' telephone numbers and then dials those telephone numbers by randomly selecting the sequence number for the telephone number? The District Court's reasoning would read the statutory alternative–a system that "stores" telephone numbers which were not randomly or sequentially generated, but nevertheless uses a random number generator to store and dial

telephone numbers in a list–out of the statute. In effect, it excised the words "store or" out of the statute entirely, creating a new text.

Congress adopted a "belt and suspenders" approach in writing the statute and clearly intended to prohibit not only systems that "produced" telephone numbers randomly or sequentially but also systems that "stored" telephone numbers by using a random or sequential number generator to numerically index lists of telephone numbers. *Facebook*, 141 S. Ct. at 1172 n.7.

As this Court acknowledged, in so doing, Congress intended to address the "shifting technological landscape" at the time of the TCPA's enactment by targeting not only archaic, rudimentary mechanical systems that dialed numbers randomly but also newer, computerized list-based dialers that nevertheless relied on random selection to call numbers in a list. *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 880–81 (3d Cir. 2022). As noted by several *amici* in *Facebook*, there do not exist modern dialing platforms that merely generate telephone numbers sequentially; such systems have not been used since the 1960s and were well out of fashion when the statute was passed in 1992.

14

2. The District Court's reading is incorrect because it runs contrary to the plain statutory text of a "number generator," which has a common, precise technological meaning.

More importantly, the District Court's interpretation is at odds with the plain statutory text, which does not require that the "number generator" generate "telephone" numbers. The District Court inserted the word "telephone" to precede the word "number generator," adding words to the statute that were not there and altering its meaning. The statute does not reference telephone number generation, and the Supreme Court did not include those words in its ruling in *Facebook*.

Turning again to the relevant statutory text, "number" appears three times. However, it is telling that Congress inserted the word "telephone" before "number" only twice, requiring that the equipment "store or produce *telephone numbers*." 47 U.S.C. § 227(a)(1)(A) (emphasis added). The third use of "number"–to "dial such numbers"–is similarly unambiguous. 47 U.S.C. § 227(a)(1)(B). The pronoun "such" is a reference to the noun "telephone." As this Court held, an ATDS must use the random or sequential number generation functionality to dial phone numbers. *Panzarella*, 37 F.4th at 881.

15

But what of the middle use of "number," "using a random or sequential number generator?" 47 U.S.C. § 227(a)(1)(A). How can equipment "store . . . telephone numbers to be called, using a random or sequential number generator" if it cannot generate telephone numbers randomly? The District Court struggled to answer this very question. For all its references to the "ordinary meaning" of the term "generate," the District Court neglected to address the most obvious technical explanation of how equipment can "store" a "telephone number" using a random or sequential number "generator" without storing randomly generated telephone numbers themselves: by generating a numbered list of telephone numbers, as illustrated in the Plaintiff's brief:

| List Order | Telephone Number | Times Voted | Party Affiliation |
|---|---|---|---|
| 1 | 215-555-0001 | 1 | Democrat |
| 2 | 215-555-0003 | 11 | Democrat |
| 3 | 215-555-0004 | 9 | Democrat |

Appx. 53

Random or sequential number generators accomplish the task of generating numbered lists from a specified input. They encompass a broad category of programming tools used by software engineers when designing software to automate certain functions in ways that would

16

otherwise be performed manually. Congress did not invent the term, and it does not mean the same thing as "telephone number generator." Any computer engineer will agree, as number generators are a well-understood tool of such engineers. *See* DAVID JOHNSTON, RANDOM NUMBER GENERATORS-PRINCIPLES AND PRACTICES Preface (2018) (describing random number generators).

Outside the telemarketing context, random number generators are most often found in casinos. Video card games and slot machines use random number generators to randomize the cards a player receives or determine the position a wheel will stop at on a slot machine. The number generation code indexes and assigns a numeric value to each card or wheel position (for example, indexing . . . Queen of Spades = 11, King of Spades = 12 . . .), uses software code to generate a number (11), and then displays to the player the card or wheel position associated with the number it generated (Queen of Spades). *See* J. EDWARD CROWDER, CASINO GAMBLING FOR FUN AND PROFIT 55 (2000).

In the TCPA context, equipment "stores" telephone numbers using a random or sequential number generator by assigning a random or sequential index number to each entry in a list of phone numbers. Just

17

like a video poker machine indexes each card in a deck (Queen of Spades = index 11, King of Spades = index 12), the ATDS equipment indexes each telephone number in the list by assigning it a random or sequential number (215-555-0001 = index 1 . . . 215-555-0069 = index 11 . . .). And then, just like a card game randomly generates numbers (11) and produces to the player the card associated therewith (Index 11 has been picked, therefore, deal Queen of Spades), an ATDS dials those telephone numbers by randomly or sequentially generating a number (11), and then uses that number to subsequently produce the telephone number to dial (Index 11 has been picked, therefore, dial 215-555-0069).

The Plaintiff alleged that the ATDS system at issue in this case operates in much the same way, dialing (akin to virtually "dealing") the telephone number associated with the numerical list entry, "List Order." Here, the "List Order" portion of the database was not present when the list was uploaded to the dialer; the dialer used a sequential number generator to generate the numbers associated with the "List Order" parameter (just like assigning each card a value), and then the dialer used a random number generator to select the associated "List Order" numbers and dial their associated telephone numbers (just like

18

dealing an X value card). Plaintiff even cited the computer code used to generate a random number once per second and dial a telephone number based on the randomly generated number. Appx. 24.

As the Plaintiff explained in his Brief in Opposition, an entity could associate a myriad of data fields with a list of telephone numbers, among them a randomly or sequentially generated index number. Appx. 53. If the dialer uses random or sequential number generation functionality to select the index number assigned to a telephone number and call it, it runs afoul of the TCPA.

But the dialer can still call ordered lists of telephone numbers without using a random or sequential number generator, akin to searching a deck of cards for the Queen of Spades visually. The system used in *Facebook* was programmed in the latter manner, using a triggering event, not random or sequential number generation, to search the database for the number to call. In other words, unauthorized account access on account index number 11 instructed the dialer to call the telephone number associated with the entry and inform that entry that the account had been hacked.

Of course, dialing systems differ in both the naming and structure of the randomly generated numbers referred to herein as indexing numbers, and Plaintiff is not required to plead the exacting technical specificity of how the numbers are generated, which is properly reserved for discovery. *Cf.* Appx. 62–63 (citing *Smith v. Vision Solar LLC*, No. 20-2185, 2023 WL 2539017 at *2 (E.D. Pa. Mar. 16, 2023), which held that the ATDS issue is a mixed question of law and fact). However, the Plaintiff alleged that the system used to make the call, Twilio, uses programming code, including supporting various random number parameters, to generate random numbers once per second which are then used to dial calls. Appx. 24. (citing documentation).

The nature of random number generation and the process of associating it with list entries is notoriously complex. Indeed, some dialers use Universally Unique Identifiers as long as 128 digits to associate unique list entries with dialing campaigns. *See, e.g.*, *Get Campaign UUID*, GENESYS, https://help.genesys.com/pureconnect/ mergedprojects/wh_id/desktop/hid_get_campaign_uuid.htm [https://archive.ph/uYfBj]. The International Organization for Standardization (ISO) has standardized the process for random number

generation, to include randomly generating such UUIDs and incorporating them into computer database systems, using a process of 128-digit-long random number generation to provide sufficient entropy. *See* ISO, *Generation of Universally Unique Identifiers (UUIDs) and Their Use in Object Identifiers*, ISO/IEC 9834-8:2014 (2014).

The Plaintiff alleged with detailed specificity exactly what the Supreme Court instructed must be alleged for a dialing system to be an ATDS. Appx. 23–26. Any system that takes a list of telephone numbers (such as the list of voters' telephone numbers at issue here) and subsequently processes them to add a random or sequential indexing number or UUID to the list, such as for the purpose of ordering the list, is an ATDS. Similarly, equipment that "produces" a "telephone number" using a random or sequential number "generator" can use the number generator to select the calling list entry from long-term storage and move it to short term storage to be able to dial it, akin to dealing a card.

The statutory text itself does *not* require that the equipment store or produce telephone numbers using a random or sequential *telephone number* generator. Rather, the statute only requires that the equipment store or produce telephone numbers using a random or sequential

*number* generator. The District Court erred in inserting the word "telephone" into the phrase "number generator," a reading that, in addition to being superfluous and technologically inaccurate, is at odds with the plain statutory text. It renders the ATDS prohibition far underinclusive by crippling it to only outlaw equipment which itself generates telephone numbers randomly or sequentially. That's not what Congress intended, and that technology hasn't been used since the 60s.

3. The District Court's requirement that a "number generator" itself generate telephone numbers randomly has been rejected by other courts because it opens the floodgates to the very calls the statute makes clear it sought to prevent.

"We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002). In this case, adopting the District Court's construction would narrow the ATDS prohibition's reach so severely as to render unlawful only systems that dial telephone numbers *themselves* randomly or sequentially.

This approach of deliberately inserting words into the statute that Congress chose to omit is at odds with the legislative history of the TCPA, a remedial statute designed to protect consumers. *Gager v. Dell*

22

*Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). Congress does not hide elephants in mouseholes, and such an interpretation would effectively gut the TCPA's statutory scheme. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 57 (2012) (discussing textual purpose and its role in interpretation).

Adopting the District Court's reasoning (and those of the progeny it cites, including *Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022)) would permit any caller to sidestep the ATDS prohibition by merely uploading a list of random telephone numbers to an autodialer and then directing the autodialer to dial the telephone numbers in the list in the same manner as described above, using randomly generated indexing or similar numbers. After all, doing so eliminates the functionality the District Court said was required: the ability for the equipment to randomly generate telephone numbers by itself.

In executing this technical loophole, a caller could nevertheless cause the harm Congress sought to remedy without any repercussions by merely changing the physical and procedural layout of its dialing system. Although the system described above does not itself "produce" or "store" randomly generated telephone numbers, but merely uses a

23

random number generation process to select numbers in a list, the caller would still run the risk of "dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity," all the while escaping liability. *Cf. Panzarella*, 37 F.4th at 881.

In essence, the District Court's approach legalized all list-based dialers that do not randomly or sequentially generate telephone numbers themselves. Stated otherwise, if an autodialing platform was programmed to use a random or sequential number generator to either store or produce telephone numbers to be called (such as by generating an indexing number or another number providing similar functionality), but did not self-generate its own list of telephone numbers randomly, that system is not an ATDS, according to the District Court, even though the Supreme Court and the Congress both said otherwise. The District Court's erroneous ruling that equipment must self-generate the telephone numbers it thereafter dials results in nothing being an ATDS.

Realizing the unintended effects of such an underinclusive interpretation, the District of Colorado in *Scherrer v. FPT Operating Co., LLC*, recently clarified an ATDS need not generate telephone numbers randomly by itself. Rather, it held that equipment is an ATDS

24

if it uses a randomizer to select numbers from a list, as described above, and, in so doing, dial telephone numbers:

> [A] random or sequential number generator under the TCPA can generate a number (as opposed to a telephone number) that is used to store and to order a list of telephone numbers to be called later. . . . [T]his Court finds an autodialer that stores a list of telephone numbers using a random or sequential number generator to determine the dialing order is an ATDS under the TCPA.

No. 19-CV-03703-SKC, 2023 WL 4660089, at *3 (D. Colo. July 20, 2023)

In the aggregate, far more district courts have aligned themselves with the District of Colorado and concluded that the statute's reference to a "random or sequential number generator" means just that: an ATDS is not limited to a random or sequential *telephone* number generator; it prohibits the use of *any* random or sequential number generator, including ones that don't generate telephone numbers but instead generate indexing numbers, UUIDs, and similar numbers which are then used to randomly dial telephone numbers from lists.

A long line of courts have held that any equipment that uses a "random or sequential number generator" to place calls, including by using the generation functionality to store telephone numbers in or produce telephone numbers from a list, is an ATDS. *See Libby v. Nat'l Republican Senatorial Comm.*, 551 F. Supp. 3d 724, 729 (W.D. Tex.

2021); *Montanez v. Future Vision Brain Bank, LLC*, 536 F. Supp. 3d 828, 837 (D. Colo. 2021); *MacDonald v. Brian Gubernick PLLC*, No. CV-20-00138-PHX-SMB, 2021 WL 5203107, at *2 (D. Ariz. Nov. 9, 2021); *Poonja v. Kelly Servs., Inc.*, No. 20-CV-4388, 2021 WL 4459526, at *3 (N.D. Ill. Sept. 29, 2021); *Carl v. First Nat'l Bank of Omaha*, No. 2:19-CV-00504-GZS, 2021 WL 2444162, at *9 (D. Me. June 15, 2021).

Moreover, at least three courts have expressly rejected the District Court's holding here, that an ATDS must self-generate telephone numbers randomly or sequentially, instead holding that "number generator" references random programming code that can control a list-based dialer. *Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294, 300–301 (D.S.C. 2021); *McEwen v. Nat'l Rifle Ass'n of Am.*, 2021 WL 5999274 (D. ME Dec. 20, 2021); *Barnett v. Bank of Am., N.A.*, No. 3:20-CV-272-RJC-DSC, 2021 WL 2187950, at *2 (W.D.N.C. May 28, 2021).

By contrast, far fewer district courts have embraced the reasoning employed by the District Court in this case, holding that only allegations of random telephone number generation suffice. *But see Timms v. USAA Fed. Sav. Bank*, 543 F. Supp. 3d 294, 300–301 (D.S.C.

2021); *Mina v. Red Robin Int'l, Inc.*, No. 20-CV-00612-RM-NYW, 2022 WL 2105897, at *4 (D. Colo. June 10, 2022).

Furthermore, the vast majority of these cases are distinguishable because, just like in *Facebook*, defendants in them did not use random or sequential number generators to select numbers from lists; they instead used some form of targeted, non-random, non-sequential process to select numbers. *See Barry v. Ally Fin., Inc.*, No. 20-12378, 2021 WL 2936636, at *4 (E.D. Mich. July 13, 2021) (targeted list of debtors); *Borden v. eFinancial, LLC*, No. C19-1430JLR, 2021 WL 3602479, at *5 (W.D. Wash. Aug. 13, 2021), aff'd, 53 F.4th 1230 (9th Cir. 2022) (response to submission on website form).

Ultimately, as the plain text of the statute makes clear, an ATDS is not limited to randomly or sequentially generating telephone numbers itself. Rather, as the statute's deliberate omission of the word "telephone" makes clear, a number generator, as opposed to a telephone number generator, used to store or produce telephone numbers from a list, is an ATDS.

Only this reading prevents the unintended consequences of a loophole where a caller can merely upload a list of randomized telephone numbers to a dialer and then instruct the dialer to dial through the list. And, most importantly, the Supreme Court already posited that a dialer that stores and dials telephone numbers in a list randomly or sequentially violates the TCPA in its *dicta* in *Facebook*.

B.    *The District Court paid insufficient heed to the Supreme Court's decision in Facebook v. Duguid. Its reliance on other decisions was therefore misplaced.*

In *Facebook v. Duguid*, the Supreme Court emphasized that a dialer that uses a random or sequential number generator to dial telephone numbers from a list still violates the TCPA. In the much-cited Footnote 7 of the opinion, the Court stated:

> For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time. In any event, even if the storing and producing functions often merge, Congress may have "employed a belt and suspenders approach" in writing the statute.

*Facebook*, 141 S. Ct. at 1172 n.7 (cleaned up).

Despite providing clarity on the very issue that forms the subject of this appeal, the District Court pays insufficient heed to *Facebook*'s

28

Footnote 7. It improperly dismisses this important dictum off hand by noting that "list-based calling was not at issue in *Facebook*." Appx. 10. However, as this Court has counseled, Supreme Court dicta is highly persuasive and should not be idly ignored. *In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000). Moreover, it inexplicably cites to this Court's *dicta* in *Panzarella* to conclude that this Court permitted list-based calling in *Panzarella* or at least "does not view calling numbers on a list as generating those numbers randomly or sequentially." *Id.* 9. But that is not what this Court said in *Panzarella*, and it is not what Plaintiff alleged. Rather, Plaintiff alleged that sequential number generation was used to dial telephone numbers on the list, which, as a technical matter, violates the plain language of the statute. Appx. 22.

Neither *Facebook* nor *Panzarella* construe the ATDS prohibition so narrowly as to require that an ATDS self-generate telephone numbers. Nor did the Supreme Court hold that a dialer must generate random or sequential *telephone* numbers to meet the ATDS definition. Such a holding would have required the Supreme Court to decide the meaning of the phrase "random or sequential number generator"—a

question that was not at issue and was not briefed. And, as explained above, it would have altered the plain language of the statute.

Moreover, the District Court's elucidation on this footnote precisely demonstrates why the Plaintiff's approach is the correct one. The District Court posited that the footnote offers "an example of how an ATDS might "store" phone numbers using a random number generator." Appx. 10. As explained above, a sequential number generator could store a sequential index number or UUID along with a telephone number in a list and use a random number generator to determine the order in which to later dial the telephone number. Alternatively, a random number generator could produce a random or sequential index number to select a record (card) from the deck and transfer it into short-term computer memory to dial (deal) it.

In so doing, such a random number generator would not generate telephone numbers itself; instead, it would generate index numbers, which correspond to the positions of telephone numbers in an ordered list or cards in a deck. This footnote shows, at the very least, that the Supreme Court did not commit to any specific definition of "random or

sequential number generator." In fact, it alludes to some aspects of the very technology Plaintiff alleges was used to dial him. Appx. 23–26.

The equipment described in Plaintiff's complaint cannot function, and therefore cannot dial phone numbers at all, without executing number generators. "Predictive" dialers rely on random or sequential number generators to instruct databases to store and produce telephone numbers to be called; operating on the basis of the telephone numbers themselves would render them technologically impractical from a coding perspective. Appx. 24. Without this key component, a dialing campaign would require an agent to manually place calls, via organic decision making, or, as in *Facebook*, through some other organic one-to-one triggering event. And no facts indicate that the calls were manual or dialed through some organic triggering event, particularly as *nobody was on the line* when the Plaintiff answered the call. Appx. 22.

The District Court's reference to a "random number generator" here is telling and is at odds with its interpretation of the phrase to mean "random telephone number generator." The two are not the same, and a random number generator has a specific, definite technical meaning. The District Court was forced to acknowledge that a system

31

might store phone numbers using a random number generator (i.e. a generator that generates numbers but not telephone numbers), but unsatisfyingly arrives at the wrong point, positing that the Supreme Court only intended to rebut "an argument that the phrase "store and produce" is redundant." Appx. 10. The District Court, however, misses the Supreme Court's point: because "random or sequential number generator" modifies "store" and "produce," the Court was rejecting the argument that equipment that does not use a random number generator is still an ATDS; it was not restricting the term to solely encompass random telephone number generation.

As the Supreme Court made clear, and, as the District of Colorado held in *Scherrer*, Footnote 7 indicates the type of equipment used as an ATDS is not limited to equipment that stores or produces telephone numbers randomly or sequentially. *Scherrer*, 2023 WL 4660089, at *3. Rather, if the equipment uses random or sequential number generation in some other way, such as to index a list of numbers provided to the equipment, it is an ATDS. Simply put, "the equipment in question must use a random or sequential number generator." *Facebook*, 141 S. Ct. at 1170. Although this equipment may not be capable of generating

32

telephone numbers themselves randomly or sequentially, it still stores or produce telephone numbers to be called by using the number generation functionality when indexing lists.

The importance of the Supreme Court's dicta in *Facebook* cannot be understated because it proves tremendously helpful in segregating list-based dialers into ATDS and non-ATDS based categories based on a concrete, provable functionality–random or sequential number generation–not a vague standard like the degree of human intervention used to place the call or a loophole like whether the telephone number was generated randomly. *Facebook*, 141 S. Ct. at 1173. The Supreme Court framed the question presented as that of *number* generation, not *telephone number* generation, and its holding states that equipment must use a random or sequential "number generator." *Id.* at 1169.

Indeed, only this reading alleviates the District Court's concerns about standards surrounding how a list was "curated." Appx. 11. The question is not as much about "curation" as it is whether a number generator, as opposed to some other trigger, was used to place the call. Plaintiff's interpretation is nevertheless more workable and judicially manageable, as it still inquires into if a "random or sequential number

33

generator" is used to select numbers from a list. *Id.* As the District Court explained, it either does or doesn't. *Id.*

If a dialer "stores" or "produces" telephone numbers using a random or sequential number generator, it is an ATDS. If it does not, it is not an ATDS. As explained below, the system at issue in this case is an ATDS because the Plaintiff has alleged that it stores or produces telephone numbers using a random or sequential number generator.

C.    *This Court's decision in Panzarella is not inconsistent with the Plaintiff's interpretation, which alleviates the harm the TCPA sought to address while permitting certain list-based calls.*

An automatic dialer either uses random or sequential number generation functionality or it does not. Automatic dialing equipment need not use random or sequential number generation technology to nevertheless place an automated call, the most salient example of which is a one-to-one triggering event. But if it relies on number generation to store, produce, and dial telephone numbers as alleged in the Plaintiff's complaint, it is an ATDS and is subject to the ATDS prohibition.

As this Court held in *Panzarella*, the touchstone for whether or not the TCPA's ATDS prohibition was violated hinges on whether an ATDS was used to place the call. *Panzarella*, 37 F.4th at 878. An ATDS

was used to place the call *if and only if* its random or sequential number generating functionalities were used to place the call. *Id.* at 881–82. The equipment in this case is an ATDS because it used number generators to store and produce telephone numbers to be called. *Id.* at 867.

However, in *Panzarella*, this Court did not appear to address the critical issue in this case: whether using a random or sequential number generator to dial telephone numbers from an indexed list of telephone numbers constitutes "using" an ATDS. Indeed, as the District Court surmised in its opinion, "*Panzarella* seems to mean that calling numbers from a list does not amount to generating numbers randomly or sequentially" but nevertheless acknowledged that "the legality of list-based calling was not squarely placed at issue in *Panzarella*." Appx. 8.

The Southern District of New York recently thoughtfully distinguished between list-based dialers that use ATDS functionality and those that do not and indicated that Congress did not intend to render all list-based dialers lawful. In so doing, it distinguished between dialers that use triggering events, such as an "algorithm to determine how many calls to automatically place" and "adjust the number of calls that are automatically placed . . . at any given time"

from an ATDS-based dialer, which employes "random- or sequential-number-generating capacity" to dial numbers from a list. *Jiminez v. Credit One Bank, N.A.*, 632 F. Supp. 3d 381, 385, 389 (S.D.N.Y. 2022) (citing *Panzarella*, 37 F. 4th at 881-82). It held that the former did not use ATDS functionality; it posited that the latter does. *Id.*

The Plaintiff submits that this Court should clarify its holding in *Panzarella* and hold that using a random or sequential number generator to store or produce and dial telephone numbers from a list constitutes "using" an ATDS for the purposes of the TCPA. The Plaintiff has alleged–and this Court is bound to accept as true–the allegation that the Defendants used a dialer which stores, produces, and dials telephone numbers using a random or sequential number generator, as opposed to a one-to-one triggering system akin to that described by the Southern District. Appx. 26. The system necessarily relied on such random or sequential number generators to instruct the database containing the list which telephone numbers it desired to store, produce, and call.

The Defendants did *not* use a dialer that automatically dialed numbers through nonrandom, nonsequential means, such as through

organic one-to-one triggering events, and absolutely no part of the record supports this conclusion. Rather, like a video card game or slot machine, the dialer used a random or sequential number generator to instruct a database containing telephone numbers and other information (just like shuffling one or more decks of cards) to select one or multiple telephone numbers randomly or sequentially (just like randomly picking a numbered card from a deck), and then dial those telephone numbers (just like dealing the card to the player).

Caselaw is rife with examples of the lawful use of automatic dialers that do not use unlawful random or sequential number generation and instead dial based on the aforementioned triggering events, and their functionality is easily distinguished from that of the dialer described here. For example, in *Brickman v. United States*, the Ninth Circuit held that Facebook did not use an ATDS when it sent birthday text messages because the birthdays, not random or sequential number generators, were employed to draw numbers to be called. 56 F.4th 688 (9th Cir. 2022). Similarly, the defendant in *Panzarella* used account delinquency to determine when and to whom to send messages to from a list of borrowers. *Panzarella*, 37 F.4th at 882. And in

*Facebook*, the plaintiff complained of automated text messages sent as a result of account security notifications, such as accessing an account using an unrecognized web browser. *Facebook*, 141 S. Ct. at 1168. In *Facebook*, the Supreme Court already determined that such systems, which sent one-to-one messages to individuals upon a triggering event, were not the type of technology targeted by Congress. *Id.* at 1171.

The plaintiffs in these cases alleged uses of list-based dialers, but they did not allege that these dialers used any form of random or sequential number generation functionality, nor could they, because they lacked the requisite coding for either storing or producing telephone numbers to be called in this way. Indeed, they were anything *but* random, relying on specific actions and triggers, not dialing from a list randomly or sequentially. Those cases are prime examples of how automated systems can dial numbers using non-random, non-sequential processes, without using random or sequential number generators, and consequently not run afoul of the ATDS prohibition.

But Plaintiff has alleged differently: the equipment used to contact him both stored and produced the telephone number to be called using a random or sequential number generator and dial his number.

38

Appx. 26. It did so as described above: by generating a sequential list index number and then dialing, or dealing, calls to telephone numbers in the list associated with those index numbers. And, as this Court acknowledged, the conduct of using random or sequential number generation functionality, as opposed to trigger functionality, has unique harms that the TCPA was designed to remedy. *Panzarella*, 37 F.4th at 879. Those harms are precisely the ones Plaintiff alleges, having received three calls he had no interest in and making him wait and waste time to even identify the nature of the call. Appx. 22.

Ultimately, the Plaintiff's approach is entirely consistent with this Court's decision in *Panzarella*, which made clear that the use of random or sequential number generation functionality to place a call is illegal. *Panzarella*, 37 F.4th at 881–82. This Court should clarify that its holding in *Panzarella* applies to list-based dialing equipment, provided that a random or sequential number generator is used to dial telephone numbers from a list. Because the Plaintiff has alleged the same, this Court should reverse the holding of the District Court to the contrary.

## VII.    CONCLUSION

Reading the statute to prohibit dialing from a list when number generation functionality is used but permitting it when some other non-random, non-sequential functionality is used is entirely consistent with the TCPA's stated consumer protection ends, rendering the statute neither overinclusive nor underinclusive. Alleging and determining *how* a dialer used the numbers from its list is the only approach that is both concrete and manageable enough to serve the TCPA's stated statutory purposes. And it is the only reading consistent with the Supreme Court.

The reading the Plaintiff proposes, and *only* the reading the Plaintiff proposes, prohibits certain list-based calls, preventing callers from sidestepping the ATDS prohibition by simply avoiding random or sequential telephone number generation problems by merely using a list. At the same time, it permits beneficial list-based calls placed non-randomly and non-sequentially, such as those triggered by a request for customer contact, a congratulatory note on a birthday, or an alert that one's online account may be compromised. *Cf. Borden*, 53 F.4th 1230; *Brickman*, 56 F.4th 688; *Facebook*, 41 S. Ct. 1163.

The District Court was wrong on the law because it construed the text of the TCPA too narrowly, providing for a massive loophole that allows bad actors to escape TCPA liability. As the Supreme Court has counseled, the TCPA's reach is broader and prohibits the use of a random or sequential number generator to call numbers from a list. This approach is consistent with that this Court has articulated in *Panzarella*, is in line with other courts interpreting the interplay between the ATDS prohibition and list-based dialers, and ultimately strikes the correct balance between permissible and impermissible list-based calls. In line with the overwhelming precedent in Plaintiff's favor, including highly persuasive Supreme Court *dicta*, this Court must reverse the District Court and order Plaintiff's complaint reinstated.

Dated: October 4, 2023

s/ ANDREW R. PERRONG
ANDREW R. PERRONG
1657 The Fairway #131
Jenkintown, PA 19046
andyperrong@gmail.com
(215) 791-6957
*Plaintiff-Appellant Pro Se*

## VIII.   COMBINED CERTIFICATES OF COMPLIANCE AND SERVICE

1.      I Certify that I am the Plaintiff-Appellant *pro se* in the above-captioned matter and therefore need not be a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      This brief complies with the type-volume limitations imposed by Federal Rule of Appellate Procedure 32(a)(7)(B)(i). It contains 7,996 words, excluding the parts of the brief exempted by Rule 32(f).

3.      This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Word in 14-point Century Schoolbook font.

4.      I also certify, pursuant to Third Circuit Local Appellate Rules, that the text of the brief filed on ECF is identical to the text of the paper copies, and further that a virus detection program has been run on the file and no virus was detected. The file was scanned with Windows Defender, version last updated 10/4/2023.

5.    I certify that I filed the foregoing Brief of Appellant and

Appendices via the ECF system, I personally mailed the required hard

copies of the foregoing Brief of Appellant and Appendices to the Clerk of

the United States Court of Appeals for the Third Circuit, and emailed a

copy of the foregoing Brief of Appellant and Appendices via email to

janine@daniellolaw.com and upon Janine D. Martin, Esq. at 509 Swede

St. Norristown, PA 19401.


Dated: October 4, 2023

                                           s/ ANDREW R. PERRONG
                                           ANDREW R. PERRONG
                                           1657 The Fairway #131
                                           Jenkintown, PA 19046
                                           andyperrong@gmail.com
                                           (215) 791-6957
                                           *Plaintiff-Appellant Pro Se*

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

―――――――――

№. 23-2415

―――――――――

Andrew R. Perrong,
*Plaintiff-Appellant*,

v.

Montgomery County Democratic Committee,
Montco Victory, and Joseph Foster
*Defendants-Appellees.*

―――――――――

Appeal from Memorandum Opinion and Order
Granting Motion to Dismiss in No. 2:22-cv-04475 in the
United States District Court for the Eastern District of Pennsylvania.
Honorable Mitchell S. Goldberg

―――――――――

**APPENDIX VOL. I, PAGES APPX. 1 – APPX. 11**

―――――――――

/s/ ANDREW R. PERRONG
ANDREW R. PERRONG
1657 The Fairway #131
Jenkintown, PA 19046
andyperrong@gmail.com
(215) 791-6957
*Plaintiff-Appellant Pro Se*

# <u>Table of Contents – Vol. I</u>

Notice of Appeal ..................................................................... 1

Order Being Appealed............................................................ 3

Opinion Under Review ........................................................... 4

# <u>Table of Contents – Vol. II</u>

Docket Entries from the Originating Court ........................ 12

Amended Complaint.............................................................. 15

Defendant Montgomery County Democratic Committee's Motion to Dismiss ................................................................................ 30

Plaintiff's Response in Opposition to Defendant Montgomery County Democratic Committee's Motion to Dismiss......................... 42

Defendant Montco Victory and Joseph Foster's Motion to Dismiss ... 56

Plaintiff's Notice of Supplemental Authority in Opposition to Defendant's Motion to Dismiss ............................................ 62

Plaintiff's Response in Opposition to Defendants Montco Victory and Joseph Fosters' Motion to Dismiss....................................... 64

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW R. PERRONG
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

     Plaintiff

vs.

MONTGOMERY COUNTY
DEMOCRATIC COMMITTEE
21 E. AIRY ST.
NORRISTOWN, PA 19401,

MONTCO VICTORY
21 E. AIRY ST.
NORRISTOWN, PA 19401,

and

JOSEPH FOSTER
348 TREVOR LN.
BALA CYNWYD, PA 19004

     Defendants.

REC'D AUG -4

Case No. 2:22-cv-04475-MSG

JURY TRIAL DEMANDED

### NOTICE OF APPEAL

Notice is hereby given that Andrew R. Perrong, Plaintiff *pro se* in the above-captioned case, appeals to the United States Court of Appeals for the Third Circuit from the Memorandum and Order granting Defendants' Motion to Dismiss, entered in this action on July 18, 2023 (ECF Nos. 21 and 22).

Dated: **August 4, 2023**

Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

## CERTIFICATE OF SERVICE

Plaintiff certifies that on August 4, 2023, he filed the foregoing with the Clerk of Court in person, which will send an email notification to counsel for Defendants via ECF. Plaintiff further certifies that he emailed a copy to counsel for Defendants at janine@daniellolaw.com.

Dated: **August 4, 2023**

Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ANDREW R. PERRONG,** | |
| *Plaintiff*, | **Civil Action** |
| *v.* | **No. 22-cv-4475** |
| **MONTGOMERY COUNTY DEMOCRATIC COMMITTEE** *et al.*, | |
| *Defendants.* | |

## <u>ORDER</u>

**AND NOW**, this 18th day of July, 2023, upon consideration of Defendant Montgomery County Democratic Committee's Motion to Dismiss (ECF No. 11), Defendant MontCo Victory's Motion to Dismiss (ECF No. 16), and the responses thereto, and for the reasons set out in the accompanying memorandum opinion, it is hereby **ORDERED** that:

1.  Defendants' Motions to Dismiss (ECF Nos. 11 and 16) are **GRANTED**.

2.  Perrong's Amended Complaint is **DISMISSED WITH PREJUDICE**.

3.  The Clerk of Court shall close this case.

**BY THE COURT:**


 */s/ Mitchell s. Goldberg*
**MITCHELL S. GOLDBERG, J.**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW R. PERRONG,** | |
| *Plaintiff,* | **Civil Action** |
| *v.* | **No. 22-cv-4475** |
| **MONTGOMERY COUNTY DEMOCRATIC COMMITTEE et al.,** | |
| *Defendants.* | |

## MEMORANDUM OPINION

**GOLDBERG, J.**                                                    **July 18, 2023**

Plaintiff Andrew Perrong ("Perrong") brings claims under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, against Defendants Montgomery County Democratic Committee, Montco Victory, and Joseph Foster (collectively, "Defendants"), based on three phone calls Perrong received urging him to vote for Montgomery County Democratic candidates. Perrong alleges that Defendants violated the TCPA by calling his phone using an automatic telephone dialing system ("ATDS").

Defendants have moved to dismiss Perrong's complaint for failure to state a claim. For the reasons set out below, the motions will be granted.

## I.   FACTS

The following facts are taken from Perrong's Amended Complaint and will be viewed in the light most favorable to him as the nonmoving party:

- − Defendants are two political action committees (PACs) that support Democratic Party candidates in Montgomery County, Pennsylvania, and Joseph Foster, who was the chairman of both PACs at the relevant times. (Amended Complaint ¶¶ 5-7.)

- Defendants placed three calls to Perrong's phone, on October 22, 23, and 24, 2019. (Id. ¶ 28.)

- The first two calls went to voicemail but no voicemail message was left. (Id. ¶ 35.)

- Perrong answered the third call. When he did so, there was "an almost 10-second delay, silence, and an audible 'click' and call center noise before the caller on the other side came onto the line." The caller then asked Perrong when he planned to fill out an absentee ballot to vote for Montgomery County Democrat candidates and informed Perrong that the call was "paid for by the Montco Victory." (Id. ¶¶ 39-43.)

- Perrong has never registered to vote as a Democrat, never voted for a Democrat, "and is not a liberal left-winger." (Id. ¶ 45.)

- The calls were made using a service called Twilio. "Twilio provides a computerized platform designed for making high volumes of automated, sequential or random calls, primarily through being connected to an [automatic telephone dialing system ('ATDS')]. Twilio's website boasts the ability for its customers to make calls with 'indefinite scaling,' support up to 250 participants at a time, and mask caller information." (Id. ¶¶ 37-38, 53.)

- Perrong's phone carrier is a voice-over-internet-protocol (VoIP) provider that charges Perrong for each call received. (Id. ¶¶ 29-30.)

Based on the nature of the calls—the lack of voicemails, the ten-second delay, the use of a service provider that specializes in automated calls, and the calls' lack of relevance to him personally—Perrong infers that "Defendants selected numbers to be called sequentially (or possibly randomly) and then used publicly-available databases to identify the owner of the telephone number dialed when such randomly or sequentially selected call was answered." Thus, Perrong surmises that "Defendants used an ATDS, such as one which 'use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list.'" (Amended Complaint ¶¶ 46, 52 (quoting Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1117 n.7 (2021)).)

## II.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, … assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220.

When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

## III.   **DISCUSSION**

The TCPA prohibits, among other things, "mak[ing] any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to … any service for which the called party is charged for the call … ." 47 U.S.C. § 227(b)(1)(A). There is no dispute that Perrong has plausibly alleged that non-emergency calls were made to his telephone number and

that he was charged for each call. Instead, the parties dispute whether those calls were placed using an "automatic telephone dialing system."[1] Some discussion of that term is therefore necessary.

The statute defines an "automatic telephone dialing system" (ATDS) as "equipment which has the capacity … to store or produce telephone numbers to be called, using a random or sequential number generator; and … to dial such numbers." 47 U.S.C. § 227(a)(1). "To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021). Although neither the statute, associated regulations, nor case law provides examples of such devices, the statutory language seems to suggest that such a device would dial seven (or ten) random digits or sequentially call all numbers in a given area code, i.e., (215), 000-0001, (215) 000-0002, and so on.

At issue in this case is how the definition of an ATDS applies to a device that does not generate phone numbers from scratch but instead uses a stored list of numbers and "randomly" or "sequentially" dials all the numbers on that list. The Amended Complaint does raise a plausible inference that Defendants placed the calls at issue by using a list of phone numbers (such as a list of numbers corresponding to all registered voters in Montgomery County) and randomly or sequentially calling all numbers on that list. (See Perrong's Brief, ECF No. 14, at 13; Montgomery County Democratic Committee's Brief, ECF No. 11-3, at 8.) Perrong does not argue that the Amended Complaint raises the further inference that Defendants placed the calls by generating

---

[1] Defendant Montgomery County Democratic Committee additionally argues that Perrong's complaint should be dismissed as to it because the calls were placed by Defendant Montco Victory, a separate entity. Because I find that Perrong has not plausibly alleged the used of an automatic telephone dialing system, I do not address this alternative ground.

phone numbers randomly or sequentially from scratch—i.e., by generating seven random digits or by calling all the numbers (215) 000-0001, (215) 000-0002, and so on.

Thus, the only dispute seems to be whether a device qualifies as an ATDS if it randomly or sequentially dials all phone numbers on a previously compiled list, such as a list of registered voters. Perrong argues that such a device meets the statutory definition because it randomly or sequentially "produces" the numbers to be dialed. Defendant disagrees, primarily relying on the Third Circuit's decision in Panzarella v. Navient Sols., Inc., 37 F.4th 867 (3d Cir. 2022), discussed below.

Neither the Third Circuit nor the Supreme Court has squarely addressed whether calling all numbers on a previously compiled list randomly or sequentially violates the TCPA. The closest precedent on point is Panzarella v. Navient Sols., Inc., 37 F.4th 867 (3d Cir. 2022), where the defendant was a student loan servicer that placed calls from a stored "contact list" in an automated fashion. Id. at 870. In holding that the defendant's actions did not violate the TCPA, the Third Circuit contrasted "dial[ing] … telephone numbers imported from … [a] customer list" with "dial[ing] random or sequential telephone numbers" and stated that only the latter would amount to prohibited use of an ATDS. Id. at 881.

This statement in Panzarella seems to mean that calling numbers from a list does not amount to generating numbers randomly or sequentially. However, the legality of list-based calling was not squarely placed at issue in Panzarella. Rather, the Third Circuit's opinion addressed only whether "use" of an ATDS requires using its random or sequential number-generating capabilities as opposed to its other features, and the court appeared to assume that calling numbers from a list did not qualify as random or sequential generation. See id. at 879 ("[T]o use an ATDS as an auto-dialer, one must use its defining feature—its ability to produce or store telephone numbers through

random- or sequential-number generation."). I thus view the statement that list-based calling is allowed under the TCPA as dictum. See id. at 875 n.9. Nevertheless, this dictum provides an indication that the Third Circuit does not view calling numbers on a list as generating those numbers randomly or sequentially. See United States ex rel. Bahnsen v. Bos. Sceintific Neuormodulation Corp., No. 11-cv-1210, 2017 WL 6403864, at *14 (D.N.J. Dec. 15, 2017) (dictum is evidence of how a court would rule).

In the absence of binding precedent, the statutory language is instructive. The statutory definition of an ATDS requires that it use a random or sequential number "generator." Under the ordinary meaning of that term, selecting numbers from a list is not "generating" those numbers. See "generate," Merriam-Webster, https://www.merriam-webster.com/dictionary/generate ("to bring into existence"). By contrast, selecting seven random digits and stringing them together into a phone number would be generating that phone number. Therefore, a device that randomly or sequentially calls all phone numbers in a previously compiled list would not qualify as an ATDS (so long as the numbers in the list were not themselves randomly or sequentially generated).

The Ninth Circuit has adopted this view and held that calling phone numbers from a stored list does not violate the TCPA. Borden v. eFinancial, LLC, 53 F.4th 1230, 1233 (9th Cir. 2022). The court reasoned that the phrase "random or sequential number generator" means "random or sequential telephone number generator." Id. Therefore, generating a sequence of (non-telephone) numbers (e.g., 1, 2, 3, …) and using those numbers to select the first, second, and third phone numbers in a list does not count as generating sequential phone numbers. See id.

In sum, I am persuaded by the statutory term "generator," the Third Circuit's dictum in Panzarella, and the Ninth Circuit's decision in Borden that calling all phone numbers on a

6

Appx. 9

previously compiled list randomly or sequentially, as alleged here, does not violate the TCPA, provided the numbers in the list were not themselves generated randomly or sequentially.

To support his argument that list-based calling is prohibited, Perrong relies on a footnote in the Supreme Court's <u>Facebook</u> decision stating that "an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list." <u>Facebook</u>, 141 S. Ct. at 1172 n.7. The opinion offers this as an example of how an ATDS might "store" phone numbers using a random number generator, rebutting an argument that the phrase "store and produce" is redundant. But the opinion then adds that "even if the storing and producing functions often merge, Congress may have 'employed a belt and suspenders approach' in writing the statute." <u>Id.</u> Perrong reads this footnote to mean that using a random number generator to select phone numbers from a stored list violates the TCPA. However, I note that list-based calling was not at issue in <u>Facebook</u>. <u>See</u> <u>Borden</u>, 53 F.4th at 1235.

Perrong also points to a statement in <u>Panzarella</u> that "Congress understood not only that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications, … but also that they were increasingly relying on computerized databases containing telephone numbers during their dialing campaigns[.]" <u>Panzarella</u>, 37 F.4th at 880. In context, however, it is not clear that the Third Circuit meant to suggest that "relying on computerized databases containing telephone numbers" would violate the TCPA. The cited legislative history is equally susceptible to a reading that Congress meant to encourage the use of calling lists over truly random or sequential number generation as only the latter risked accidentally calling emergency numbers. <u>See</u> H.R. Rep. 102-317, 1991 WL 245201, at *7-8 (Nov. 15, 1991).

I also note that Perrong concedes, as he must, that list-based calling would not violate the TCPA if the selection of numbers in the list were "based on specific criteria," such as the calls in

Panzarella to a list of delinquent borrowers. On the facts of this case, Perrong suggests that it might be legal for a political action committee to "generate a list of Democrats and Independents voting fewer than five times, list [certain phone numbers], and personally encourage [those individuals] to vote more often" in contrast to making calls "en masse either randomly or sequentially to every registered voter in Montgomery County." (Perrong's Brief, ECF No. 14, at 11-13.) But the words "using a random or sequential number generator" are not susceptible to an interpretation that list-based calling is allowed only so long as the list is reasonably curated. Either a random or sequential number generator is used or it is not.

Given all of the above, I conclude that Perrong has not stated a claim against any Defendant for violating the TCPA, and will grant the motions to dismiss.

"[W]here a defendant moves to dismiss a deficient complaint, the court should grant leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 110 (3d Cir. 2002). Perrong's Amended Complaint unambiguously alleges that Defendants used a list of phone numbers to place calls, and Plaintiff has not argued that he could allege that Defendants generated random or sequential phone numbers from scratch. (See Amended Complaint ¶¶ 51-52, 54, 56.) The issue of whether the alleged calls were placed with an ATDS was raised in Defendant Montgomery County Democratic Committee's prior motion to dismiss (ECF No. 6), and Perrong amended his complaint since then. I therefore conclude that further amendment would be futile.

## IV.   **CONCLUSION**

For the reasons set out above, Defendants' motions to dismiss will be granted.

An appropriate order follows.