# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

―――――――――――

No. 23-2415

―――――――――――

Andrew R. Perrong,

*Plaintiff-Appellant,*

v.

Montgomery County Democratic Committee,
Montco Victory, and Joseph Foster

*Defendants-Appellees.*

―――――――――――

Appeal from Memorandum Opinion and Order
Granting Motion to Dismiss in No. 2:22-cv-04475 in the
United States District Court for the Eastern District of Pennsylvania.
Honorable Mitchell S. Goldberg

―――――――――――

## REPLY BRIEF OF APPELLANT

―――――――――――

s/ ANDREW R. PERRONG
ANDREW R. PERRONG
1657 The Fairway #131
Jenkintown, PA 19046
andyperrong@gmail.com
(215) 791-6957
*Plaintiff-Appellant Pro Se*

# **Table of Contents**

**I.    Introduction**......................................................................1

**II.   Argument**.........................................................................3

A.  An ATDS need not self-generate telephone numbers. This interpretation is incorrect as a technical and legal matter. Rather, an ATDS need only "use[] a random or sequential number generator."....3

B.  The technical meaning of a "random or sequential number generator" is plain and unambiguous. It requires no statutory interpretation. It is not the same thing as a "random or sequential telephone number generator." ..............................................8

C.  Plaintiff has pled that the Defendants used an ATDS because they used a "random or sequential number generator" to store or produce the Plaintiff's telephone number to be called. ......................................14

D.  Defendants' alternative "we didn't do it" argument must be summarily rejected..............................................................23

**III.  Conclusion**......................................................................26

**IV.   Combined Certificates of Compliance and Service** ..............28

# Table of Citations

**Cases**

*Bank v. Digital Media Sol's., Inc.*, No. 22-cv-293, 2023 WL 1766210 (E.D.N.Y. Feb. 3, 2023) ........................................................... 21

*Beal v. Outfield Brew House, LLC*, 29 F.4th 391 (8th Cir. 2022) ............. 6

*Borden v. eFinancial, LLC*, 53 F.4th 1230 (9th Cir. 2022) ....................... 5

*Brickman v. United States*, 56 F.4th 688 (9th Cir. 2022) ......................... 6

*Daschbach v. Rocket Mortg., LLC*, No. 22-cv-346JL, 2023 WL 2599955 (D.N.H. Mar. 22, 2023) ........................................................................ 20

*Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2023 WL 3947831 (W.D. Wash. June 11, 2023) .......................................................................... 18

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ................. 2, 3, 4, 14, 18

*FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) ........... 9

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) ........... 3

*McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-cv-00153-LEW, 2021 WL 5999274 (D. Me. Dec. 20, 2021) ......................................................... 20

*Panzarella v. Navient Sols., Inc.*, 37 F.4th 867 (3d Cir. 2022) ............... 16

*Salaiz v. Beyond Finance*, 2023 WL 6053742 (W.D. Tex. Sept. 18, 2023) ................................................................................................................. 22

*Smith v. Direct Building Supplies* No. 20-3583, 2021 WL 4623275 (E.D. Pa. Oct. 7, 2021) ................................................................................... 25

*Smith v. Vision Solar LLC*, No. 20-2185, 2023 WL 2539017 (E.D. Pa. Mar. 16, 2023) ............................................................................... 20, 21

*Timms v. USAA Federal Savings Bank*, 43 F.Supp.3d 294 (D.S.C. 2021) ................................................................................................................. 22

*United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235 (1989) .......... 10

*Van Buren v. United States*, 141 S. Ct. 1648 (2021) ............................. 8, 9

**Statutes**

47 U.S.C. § 227 ....................................................................................... 1

**Other Authorities**

ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE
      INTERPRETATION OF LEGAL TEXTS (2012) ................................................. 8

Defendants' Brief (Defs. ' Br.) ......................................... 10, 15, 16, 19, 21

Eric J. Troutman, *TCPAWORLD AFTER DARK: Why the Ninth
      Circuit's Borden Ruling Might be the BIGGEST TCPA TRAP Of All
      Time*, TCPAWORLD................................................................................. 6

Plaintiff's Appendix (Appx.) .......................... 2, 4, 5, 14, 17, 19, 23, 25, 26

## I.   INTRODUCTION

There is no such thing as a random or sequential *telephone* number generator. How, then, can the District Court hold that the statute at issue requires the use of non-existent technology?  The Defendants' reply and position on the straightforward definition of an Automatic Telephone Dialing System ("ATDS") is wrong. This Court should decline Defendants' invitation to delve into syntax analysis and apply the law as written and as alleged: to prohibit using precise technology: a "random or sequential number generator" to store or produce telephone numbers to be called, even if the number generator does not itself generate *telephone* numbers.

The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, *et seq.* ("TCPA"), prohibits making a call using an ATDS, which it defines as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227(a)(1) (cleaned up). This case involves calls which were placed using a random or sequential number generator to store telephone numbers, and subsequently produce those telephone numbers from storage to be called by the dialing application. Appx. 23–

26. The number generator programming code allegedly used by the system at issue was pled in the Plaintiff's complaint. *Id.*

The Defendants' brief does not address the fact that the District Court created a new piece of technology – the so-called "random or sequential *telephone* number generator." This holding ignores the plain language of the statute, and the Supreme Court's directive in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021). Technology that randomly or sequentially generates telephone numbers has never existed nor has ever been used in any of the robocalls Americans find so detestable.

This Court must refrain from being trapped into a syntax and grammatical analysis of a statute that needs no such analysis. The statute requires the simple allegation that a "random or sequential number generator" was used to place the call. The terms "random number generator" and "sequential number generator" have precise, commonly accepted meanings within the technical community. In interpreting the statute, the Court must begin and end with this precise technical meaning and hold that the Plaintiff has adequately pled the same for motion to dismiss purposes.

## II.   ARGUMENT

A.   *An ATDS need not self-generate telephone numbers. This interpretation is incorrect as a technical and legal matter. Rather, an ATDS need only "use[] a random or sequential number generator."*

As the Defendants themselves acknowledge, for years following the TCPA's enactment, the complex technical language of the TCPA's provisions have befuddled courts, which have consequently struggled to interpret the TCPA's ATDS definition. At first, courts incorrectly applied that definition too broadly to cover any equipment which stores telephone numbers, even if no random or sequential number generation was used to store or produce the telephone numbers. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1050 (9th Cir. 2018). Realizing that such an overbroad approach would encompass such technology as cell phone contact lists, the Supreme Court reversed, holding that equipment that stores telephone numbers must store those telephone numbers using a "random or sequential number generator." *Facebook*, 141 S. Ct. at 1167. As the Court held in *Facebook*:

> It is true that, as a matter of ordinary parlance, it is odd to say that a piece of equipment 'stores' numbers using a random number 'generator.' But it is less odd as a technical matter . . . as early as 1988, the U.S. Patent and Trademark Office issued patents for devices that used a random number generator to store

3

numbers to be called later. . . . For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time.

*Id.* at 1172 n.7 (cleaned up).

As the Court explained in *Facebook*, equipment is an ATDS if it uses some form of random or sequential *number* generation in its code to either store or produce *telephone numbers* to be called. *Id.* at 1167. Plaintiff alleged the same in his Amended Complaint, in addition to specifically citing the *exact programming code* in the Defendants' own telephone system documentation used to both store and produce telephone numbers using a sequential number generator. Appx. 23–26.

At its core, Defendants' (and the District Court's) position comes from a fundamental technical misunderstanding: that a "random or sequential number generator" is incapable of storing or producing *telephone* numbers when a nonrandomly generated list is used. Not so. Indeed, the Supreme Court addressed this confusion in footnote seven, describing technology that uses random number generation to store and produce telephone numbers without randomly generating those telephone numbers themselves. In programming terminology, the tool described in the aforementioned patent is referred to as a "parser," code

4

that relies on number generators to assist in categorizing and storing data, such as telephone numbers, in a database for future access.

In this case, a random or sequential number generator (Appx. 22) was used to parse a list of telephone numbers (Appx. 24), store them as records in a database (Appx. 24–25), and then produce them from the database and dial those telephone numbers upon the production of a random number (Appx. 24). Use of a list does not foreclose random number generation; neither requires use of the other. The wake of *Facebook* has caused too many to fall into this trap of fundamentally misunderstanding the statute in the opposite direction to require spontaneous random or sequential generation of telephone numbers: holding to a definition so narrow that nothing is an ATDS.

This fundamental misunderstanding was further amplified by the Ninth Circuit's self-described "confusion sandwich" in *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1233 (9th Cir. 2022), which stated that the "TCPA requires that an autodialer randomly or sequentially generate *telephone* numbers, not just any numbers." Indeed, in the subsequent decision of *Brickman v. United States*, Judge VanDyke stated "[t]he fundamental interpretative assumption underlying the

5

*Borden* decision is just wrong." 56 F.4th 688, 692 (9th Cir. 2022). That the same wrong interpretative assumption was adopted by the Eighth Circuit in *Beal v. Outfield Brew House, LLC*, 29 F.4th 391, 394 (8th Cir. 2022), is of no matter. It, too, used the wrong approach.

The "interpretative assumption" to which Judge VanDyke refers is the very same one at issue here: the assumption that an ATDS must randomly or sequentially generate *telephone* numbers. Once the words "random or sequential number generator" are understood as an existing software tool, as opposed to a question of statutory interpretation, courts can better define the plain language with the assistance of technical dictionaries and the plain meaning of the statute becomes clear. Indeed, respected defense-side attorney Eric Troutman agrees that *Borden* was wrongly decided because it fell into this "trap." *See* Eric J. Troutman, *TCPAWORLD AFTER DARK: Why the Ninth Circuit's Borden Ruling Might be the BIGGEST TCPA TRAP Of All Time*, TCPAWORLD (Nov. 18, 2022), https://tcpaworld.com/2022/11/18/tcpaworld-after-dark-why-the-ninth-circuits-borden-ruling-might-be-the-biggest-tcpa-trap-of-all-time/. TCPAWorld is the closest thing the legal community has to a legal treatise on the statute.

Autodialers can use both random and sequential number generators to operate and can be used in conjunction with telephone numbers in their storage and production of data throughout the dialing system, without dialing sequentially or randomly generated telephone numbers. Such number generators are programming tools used by software engineers to automate certain functions that would otherwise have to be manually performed by human hand.

As an illustration, one can imagine a statute concerning automobiles including the term "manual transmission" in the plain language of the text. It would be perplexing for a court to view the words "manual" and "transmission" as separate terms, consult dictionaries and grammarians, and conclude that the statute concerned the transmission of mail via hand delivery as opposed to carrier pigeon. Auto mechanics and legislatures would be confounded by such a ruling. But that is exactly the trap that both the Defendants and the District Court fell into. The fact that "random or sequential number generator" is in close proximity to "telephone number" in the statute is of no consequence. The concept of a "number generator" is distinct and must be decoupled from the separate notion of a "telephone number."

7

B.     *The technical meaning of a "random or sequential number generator" is plain and unambiguous. It requires no statutory interpretation. It is not the same thing as a "random or sequential* <u>*telephone*</u> *number generator."*

The TCPA codified existing technology into the term "random or sequential number generator." Congress does so all the time, using terms that "appropriately informed" speakers understand in a technical sense. *Van Buren v. United States*, 141 S. Ct. 1648, 1657 (2021) (discussing the term "access" in the Computer Fraud and Abuse Act). And, when Congress does so, interpreting a statute necessarily turns on terms that carry "technical meaning[s]." *Id.* (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 73 (2012)). It is inappropriate, therefore, for a court to apply principles of statutory construction to a statute that calls for the application of the commonly-accepted meaning of a precise technical term.

As explained above, however, the Defendants advance, and the District Court accepted, a *statutory* interpretation that requires an ATDS to generate *telephone* numbers randomly or sequentially based on the spatial proximity of "telephone number" to "number." That's not what the statute says, and such an interpretation is at odds with the

8

plain technical meaning of a "random or sequential number generator." The approach which the Defendants advanced, and which the District Court accepted, is akin to asking the Court to interpret the words "manual transmission" using tools of statutory interpretation. Put simply, it asks the Court to use the wrong tool for the job, using a microscope to study the shape of a mountain range. Indeed, when interpreting a statute about computerized dialers, the term "random or sequential number generator" has a precise technical meaning that matters in that interpretation. *Cf. Van Buren*, 141 S. Ct. at 1657.

Because the ATDS definition involves technology, specifically software designed to assist in autodialing telephone numbers, the "starting point" of the analysis should be in determining the technical definition of a "random or sequential number generator." This is the only way the statute will flow in harmony with itself. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Simply put, a "random or sequential number generator" refers to a distinct piece of software code – a random or sequential number generator, decoupled entirely from the previous wholly unrelated use of "telephone number."

The practical significance of Defendants', the District Court's, and the minority of other courts adopting this statutory constructionist holding is straightforward: if the statute requires the use of a random *telephone* number generator, nothing is an ATDS. Defendants' Brief ("Defs'. Br.") at 10 ("random or sequential <u>telephone</u> number generator"). The District Court incorrectly employed tools of statutory construction to define a term which required no such analysis, and which has a plain and definite technical meaning. There is simply no justifiable basis for adding this word to the statute. To the contrary, when "the statute's language is plain, the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989).

The definition of a "random number generator" is based in technology, specifically software engineering, and it is not specific to telephone numbers. The technical meaning of this term is most easily understood by the layperson by considering the following hypothetical:

Equipment is an automatic card dealing system if it:
(1) Has the capacity to store or produce cards to be dealt using a random or sequential number generator, and
(2) To deal such cards.

10

This hypothetical statute uses the same language as the statute at issue here by simply replacing "telephone numbers" with "cards." Any layperson would have no trouble distinguishing automatic card dealing systems from non-automated ones. Clearly, a dealer (like a human picking a number from a contact list) is not automated because no dealer uses a "random or sequential number generator," even though he may pick cards from a deck (akin to a contact list). But a video poker machine, which uses a random or sequential number generator to store or produce cards to be dealt, is an automatic card dealing system.

Applying a statutory construction analysis to this hypothetical statute as the District Court did to an ATDS leads to absurd results:

> Equipment is an automatic card dealing system if it:
> (1) Has the capacity to store or produce cards to be dealt using a random or sequential card number generator, and
> (2) To deal such cards.

Here, this interpretation requires equipment to use a "card number generator" to store or produce cards. Essentially, it requires the computer to "generate" a card number (just like a telephone number) out of thin air. But, as explained in Plaintiff's brief, that's not how video poker machines (or ATDSs) operate. They rely on a random number

11

generator to produce cards from the deck at random to be dealt to the player. They do not generate the deck of cards.

Computers randomize outputs using number generators, not through *sui generis* spontaneous self-generating physical processes. Moreover, it would be trivial to bypass the statute by programming the machine with, for example, a unique, random string of one billion cards to be dealt when each machine left the factory. After all, such equipment would not be "generating" cards.

So too here. Using a syntax and grammatical interpretation poses two parallel problems for the instant case. As an initial matter, Random Telephone Number Generators do not exist. The Defendants simply invent this technology out of thin air. No such system exists or is used by any company to communicate with consumers. Statutory history demonstrates that the major target of the ATDS language was predictive dialers, which operate identically to the system used here, and which use random and sequential number generators. The so-called "random or sequential *telephone* number generator" has not been used since the 1960s, decades before the TCPA was enacted.

Second, even if there was technology that could randomly generate telephone numbers, it would be trivial to bypass the statute by uploading a list of randomly generated telephone numbers. A would-be privacy invader could simply self-generate a list of telephone numbers using a separate program, or take every telephone number in a specific area, load the data into a dialing platform, and then claim that the platform did not self-generate the telephone numbers and was therefore not an ATDS, just like preprogramming cards at the factory. That's what the Defendants allege happen here (albeit on a smaller scale). It is a nonsensical distinction that invalidates the statute in its entirety, both from a textualist standpoint, as well as a policy standpoint.

The only way to read the statute in a way that makes sense here is just like in the first hypothetical. The statute prohibits scripts relying on random or sequential number generators, which can be programmed to sequence or index a list of telephone numbers into a database using a sequential number generator, and then can use a random number generator to generate a random number associated with a random telephone number's sequence in that list, to produce the telephone number from storage to the dialer, and be stored in the new order or

13

immediately dialed, exactly as described by the Supreme Court in its example of a random number generator used to determine the order in which to dial from a list of phone numbers in *Facebook*. 141 S. Ct. at 1172 n.7.

In sum, the District Court should have examined the evidence presented in light of the technical meaning of the statute. Any legal analysis, just as the statutory construction, grammatical, and syntax analysis employed here, that does not look at software code is inherently going to be relying on guesswork rather than evidence.

C.  *Plaintiff has pled that the Defendants used an ATDS because they used a "random or sequential number generator" to store or produce the Plaintiff's telephone number to be called.*

Plaintiff's allegations plead exactly what the text requires: the use of a "random or sequential number generator" to store or produce telephone numbers. That's the test the Supreme Court articulated in *Facebook*, and the Plaintiff meets that test. *Facebook*, 141 S. Ct. at 1170. In fact, the Plaintiff went a step further than what is required by including a reference to the actual dialer code in his complaint. Appx. 24 (citing Twilio's documentation for automated sequential calling). The statute does not prohibit use of a "random or sequential *telephone*

number generator," it prohibits the use of a "random or sequential number generator," full stop.

Defendants understandably cite the Ninth Circuit's self-proclaimed "confusion sandwich" in *Borden*, which is in conflict with the Supreme Court's decision in *Facebook* and has been rejected by multiple other district courts. Defs.' Br. at 15. As described above, both the District Court and *Borden* rewrote the statute to require the use of a "telephone number generator" which is illogical, not even something that exists, is not what the statute says, is not what the Supreme Court said the statute says, and which ignores the fact that a random or sequential number generator is a well-defined programming tool.

For starters, the standard articulated by the District Court, as well as *Borden* and its progeny, is impossible to meet because the technology it requires does not exist as a technical matter, as described in Section B, *supra*. Moreover, the use of a telephone number generator conflicts with the TCPA's affirmative defense of prior express consent. It would be impossible to create an ATDS that randomly or sequentially generates telephone numbers to be dialed, but somehow manages to only dial telephone numbers for which it has consent to do so.

And, once this Court understands what a random or sequential number generator is, it can better understand the plain language of the statue and see where the Ninth Circuit and the District Court went wrong. Applying principles of statutory construction to the statute to read the word "telephone" into "number generator" runs afoul of multiple canons of construction, not the least of which because, as explained in Plaintiff's brief, that interpretation renders the first half of the statutory definition of an ATDS superfluous. Defendants provide no response to these interpretational infirmities. Defendants provide no explanation as to why a system that operates exactly as described by Justice Sotomayor in *Facebook's* footnote seven is not an ATDS under their (and the District Court's) interpretation. The system described in footnote seven does not generate telephone numbers itself using a random or sequential telephone number generator.

Despite the Defendants' exhortation to consider the "context" in *Facebook*, Defs.' Br. at 12, Plaintiff's straightforward technological approach resolves the issue in a common-sense manner that presents no flaws under statutory construction or the TCPA's aims. *Cf. Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 879 (3d Cir. 2022). On the contrary,

the deluge of robocalls received by consumers every year will only increase under the District Court's formulation of an ATDS.

For illustration, we have all received a call from a foreign call center which we pick up, say hello, hear nobody on the other end (as alleged here, Appx. 22), and then hear a "bloop" sound effect before being greeted by a live human being. That is a predictive dialer utilizing a parser to randomize numbers to be called, and the system uses number generators to send out those calls so that they can call more people with fewer agents. The FCC has regulated such systems for years, including the percentage of abandoned calls permitted. Those regulations are all invalid if predictive dialers are not an ATDS, which they would not be under the reasoning advanced here. This is strange because most Americans think of the call just described as a robocall.

*Facebook* can be summarized as doing three things. *First*, the Court struck down the Ninth Circuit's decision in *Marks*, which required only that an ATDS have the capacity to store telephone numbers and automatically dial those numbers (eliminating the requirement of random or sequential number generators). *Second*, the Court specified that any ATDS *must* have the capacity to *either* store *or*

produce telephone numbers to be called, using a random or sequential *number* generator. *Third*, the Court gave meaning to the concept of how a system might do so using a number generator parser (*not* a random *telephone* number generator) in footnote seven.

Indeed, *Facebook* itself explicitly clarified that "the equipment in question must use a random or sequential number generator." *Facebook*, 141 S. Ct. at 1170 (2021). *Facebook* does not require the use of a "random or sequential telephone number generator." "Production of a telephone number is not, therefore, the *sine qua non* of an ATDS: storage of telephone numbers using a random or sequential number generator would also suffice." *Dawson v. Porch.com*, No. 2:20-cv-00604-RSL, 2023 WL 3947831, at *2 (W.D. Wash. June 11, 2023).

Cell phones do not operate using random or sequential number generators. Neither do trigger-based systems like the ones used in *Facebook* or *Panzarella*. And though the starting point for the Plaintiff's analysis is not *Facebook* but rather the plain text of the statute, *Facebook* illuminates the *only* possible meaning Congress intended when defining an ATDS: its technical meaning.

18

The Plaintiff alleged exactly what *Facebook's* footnote seven stated needed to be alleged for ATDS use. Here, the Plaintiff introduced the dialer software documentation and code into the District Court's record, which shows objectively that a random or sequential number generator was used to store or produce numbers to be dialed, despite the fact that it was also alleged that a list was used. Appx. 24.

Moreover, the use of a list is not inconsistent with the use of a random number generator, and if the case was allowed to proceed, an expert in software engineering would have explained how an uploaded list of numbers can use a random or sequential number generator in layman's terms. Given the opportunity, the Plaintiff can point to the number generator and explain its function. The program used by the Defendants cannot function, and therefore cannot dial any phone numbers at all, without this sequential number generator.

The statutory text is silent on whether or not it is illegal to use a list of telephone numbers and does not state anything about how such a list must be generated. So how could that be the correct holding of the District Court when interpreting if an ATDS was used? Defs.' Br. at 4. The statute requires merely that a "random or sequential number

generator" is used to "store or produce" the "telephone number" to be called. The Plaintiff has alleged that the system used to contact him did so and explained exactly how: through the use of a sequential number generator tool, known as a parser, to store and produce his telephone number on a list of numbers to be called. Appx. 22.

Indeed, other district courts across the country have arrived at this conclusion independently, holding that list use is not inconsistent with random number generation allegations. *Daschbach v. Rocket Mortg., LLC*, No. 22-cv-346-JL, 2023 WL 2599955, at *11 n.34 (D.N.H. Mar. 22, 2023) (holding that a number generator used with a preproduced list is consistent with *Facebook*), *McEwen v. Nat'l Rifle Ass'n of Am.*, No. 2:20-cv-00153-LEW, 2021 WL 5999274, at *4 (D. Me. Dec. 20, 2021) (a device that calls numbers from a preproduced list may be an ATDS under *Facebook*). And at least one district court in the Third Circuit has held the same. *Smith v. Vision Solar LLC*, No. 20-2185, 2023 WL 2539017, at *2 (E.D. Pa. Mar. 16, 2023) (denying summary judgment because the equipment at issue used a number generator parser to produce numbers from a prepopulated list).

*Smith* is particularly illuminating because it directly contradicts the arguments Defendants make in their brief. Defs.' Br. at 9. In *Smith*, plaintiffs put on evidence that the equipment had the capacity to use a random or sequential number generator to "load the list [of preproduced telephone numbers] into . . . memory," and to "call the list as well." *Id.* at *2 n.2. Thus, in *Smith*, as here, the defendant's equipment did not generate telephone numbers itself, but instead utilized number generators to store a preproduced list of telephone numbers in memory and then call up those telephone numbers to be dialed. *Id.* Importantly, Judge Baylson's conclusion was based on the fact that an ATDS uses a number generator to produce or store telephone numbers – not just to generate the telephone numbers themselves.

And, as noted in Plaintiff's brief, Judge Baylson is not an outlier. Dozens of judges have penned orders concluding that an ATDS does not have to self-generate the list of telephone numbers it dials. Those are enumerated in Plaintiff's brief and he will not repeat them here. Nevertheless, further citations abound. *Bank v. Digital Media Sol's., Inc.*, No. 22-cv-293, 2023 WL 1766210 (E.D.N.Y. Feb. 3, 2023) (expressly rejecting the concept of a random telephone number generator); *Salaiz*

21

*v. Beyond Finance*, 2023 WL 6053742 (W.D. Tex. Sept. 18, 2023)

(denying MTD based on inferences of automatic number generation).

Indeed, the Defendants also misrepresent the District of South

Carolina's decision in *Timms v. USAA Federal Savings Bank*, 43

F.Supp.3d 294 (D.S.C. 2021). There, the Court rejected the plaintiff's

claims because the plaintiff there, unlike here, did not allege that any

random or sequential number generation functionality was used. On

the contrary, the court held that evidence that equipment uses a

random or sequential number generator to determine the order in

which calls are placed may be sufficient to survive a motion for

summary judgment. *Id.* at 299–302.

But the District Court has denied the Plaintiff the opportunity to

take discovery into and prove such allegations of random number

generation here, instead requiring the Plaintiff to consider a completely

different and impossible test – whether the system self-generates

telephone numbers. This requirement ignores the "storage" aspect of

the statute, as well as *Facebook's* reference to systems expressly

described in its ruling which rely on number generators to index and

automatically dial stored lists of phone numbers produced from storage to the dialer (like the system alleged here).

The cases cited by the Defendants all suffer from the same infirmity: they all adopt an inappropriate statutory construction analysis instead of a technical one to make up a self-generation requirement. But this requirement ignores multiple aspects of the statute and the Supreme Court's *Facebook* decision, which requires use only of a "random or sequential number generator." Because the Plaintiff alleged exactly that, the case should not have been dismissed.

D.  *Defendants' alternative "we didn't do it" argument must be summarily rejected.*

As alternative grounds for affirming the District Court's judgment, Defendants cite to their argument that the Amended Complaint fails to allege that it was the Defendants who called. However, a review of the Amended Complaint indicates this is untrue. The Plaintiff has pled the nature and subject of the calls, including the legally required campaign finance disclosure of the payor for the calls. Appx. 22 ("'Laryssa,' with the 'Montgomery County Democrats,'" who stated the call was "paid for by the Montco Victory").

That Plaintiff conducted additional research into the telephone service provider that Defendants used to place the calls at issue in support of his ATDS allegations is no more reason to affirm the District Court's ruling than a plaintiff in a personal injury case alleging that a mechanic serviced a car's brakes shortly before an accident involving the car's owner. There is nothing more "conclusory" about alleging the service provider used to dial telephone numbers using a number generator in violation of the statute than an inference as to a mechanic's negligence in replacing brakes as to the cause of an accident.

Moreover, the Defendants have not advanced a scintilla of evidence, through affidavit or otherwise, to advance their baseless and speculative claims that the call was seemingly apparently placed by some random third party and was not authorized by the Defendants. At its core, to the extent that there is an issue as to the identity or authorization of the caller to make the calls, those issues are properly the subject of discovery. And discovery will not reveal anything groundbreaking because such allegations are patently false.

Defendants evidently have information about the calls, how they were placed, the list used to place the calls (but conveniently not the

ATDS), and the entities involved and yet speciously argue that the
Plaintiff has insufficiently alleged their involvement in the calls. As
explained more fully in the Plaintiff's opposition to the Defendants'
motion, the Plaintiff has more than adequately pled direct liability as to
Montco Victory and Joseph Foster and pled three vicarious liability
theories as to Defendant Montgomery County Democratic Committee to
support his factual allegations. Appx. 44–50, 66–68. Any factual
disputes are not properly the subject of a motion to dismiss.

Defendants' reliance on *Smith v. Direct Building Supplies* is
greatly misplaced and the facts in that case are far different than those
here. No. 20-3583, 2021 WL 4623275 (E.D. Pa. Oct. 7, 2021). In *Direct
Building Supplies*, the complaint was "bereft of allegations concerning
the names and identities of the persons with whom Smith allegedly
spoke on the phone, as well as the substance of his conversations with
those persons." *Id.* at *2. The *only* connection that Smith made to the
defendant was simply that there was a caller who stated he was
"associated" with the defendant, and he was permitted to amend.

Not so here. In addition to stating that they were calling "with the
Montgomery County Democrats," and making a *legally-required* and

significant campaign finance disclosure, Appx. 22, the call was also logically consistent, advancing an aim that these groups would have in submitting absentee ballots for their slate of candidates. Unlike in *Direct Building Supplies*, there is no reason to doubt that the caller is who they say they are, particularly because of the legal ramifications of a false campaign finance disclosure. After all, it's not like the caller encouraged the Plaintiff to vote for Republican candidates in person.

If anything, Defendants raise factual issues not properly the subject of a motion to dismiss. These factual issues provide no greater grounds for affirming the District Court any more so than a car's driver denying his ownership of an illegal substance after a traffic stop would be. Similarly, a general metaphysical doubt as to who placed the calls is no more reason to dismiss the case than a mechanic denying that he worked on a car's brakes before an accident would be. This Court cannot use these manufactured doubts as a basis to affirm.

## III.    CONCLUSION

The District Court erred in granting the Defendants' motion to dismiss and in applying principles of statutory construction to interpret a technical term with a precise technical meaning. There is no such

thing as a "random or sequential telephone number generator," and this Court should reject the Defendants' attempts at getting this court to adopt such a flawed definition. This case presents a unique opportunity for this Court to answer a straightforward question of interpreting a technical statute using technical terms. It must do so.

The Plaintiff has alleged in extreme detail how the communications at issue in this case were sent using random and sequential number generators which were programmed both to store and produce the Plaintiff's telephone number to be called, exactly as *Facebook* decreed. If that is not an ATDS, then nothing is.

Dated: December 1, 2023

s/ ANDREW R. PERRONG
ANDREW R. PERRONG
1657 The Fairway #131
Jenkintown, PA 19046
andyperrong@gmail.com
(215) 791-6957
*Plaintiff-Appellant Pro Se*

27

## IV.   COMBINED CERTIFICATES OF COMPLIANCE AND SERVICE

1.      I Certify that I am the Plaintiff-Appellant *pro se* in the above-captioned matter. I also certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2.      This brief complies with the type-volume limitations imposed by Federal Rule of Appellate Procedure 32(a)(7)(B)(i). It contains 5,323 words, excluding the parts of the brief exempted by Rule 32(f).

3.      This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6). It has been prepared in a proportionally-spaced typeface using Word in 14-point Century Schoolbook font.

4.      I also certify, pursuant to Third Circuit Local Appellate Rules, that the text of the brief filed on ECF is identical to the text of the paper copies, and further that a virus detection program has been run on the file and no virus was detected. The file was scanned with Windows Defender, version last updated 12/1/2023.

5.    I certify that I filed the foregoing Brief of Appellant and Appendices via the ECF system, I personally delivered the required hard copies of the foregoing Brief of Appellant and Appendices to the Clerk of the United States Court of Appeals for the Third Circuit, and emailed a copy of the foregoing Brief of Appellant and Appendices via email to janine@daniellolaw.com and upon Janine D. Martin, Esq. at 509 Swede St. Norristown, PA 19401.

Dated: December 1, 2023

s/ ANDREW R. PERRONG
ANDREW R. PERRONG
1657 The Fairway #131
Jenkintown, PA 19046
andyperrong@gmail.com
(215) 791-6957
*Plaintiff-Appellant Pro Se*
